First of all, Your Honor, as you know, I'm a, um... First of all, my name is Andres Gallegos. I'm a pro se litigant, and this is a very interesting scenario for this, and it seems like there was actually an error, and the merits that turned on a dispute as to the employer's intent on this case is that they're not just a, they're a private, not-for-profit corporation, so they're private, not-for-profit, so they take taxpayers' money, so any private, not-for-profit that takes tax dollars has to practice non-discriminatory hiring practices. Now, wouldn't the taxpayers want to have the most qualified person for the job? You would think? You would think. My field of work is unlike most jobs. I work in the field of public mass transportation, where it's considered a safety-sensitive job, moving people from point A to point B through moving traffic, and is really a safety-sensitive position, especially with heavy equipment that can have the potential of devastating effects, and actually eventually did in this case, and the reason being is that the people that they hired were completely inexperienced. I mean, so while they were in training, the two fatalities actually occurred in the first year that they were being trained, and these are all proven facts, and I don't see how this could be considered something that I litigated or that I created because they're proven facts, and this is why someone like me, in my experience, should be considered for promoting immediately in this field of public mass transportation, if in fact my weren't checked, because if they checked my status, they would have known that I worked for the regional transportation district in Denver before I came here, and I worked there as a fill-in transit supervisor, and actually did every single criteria that was offered on the application, so I met every single criteria in there, and the first time I applied, I wasn't accepted because they said, well, they probably wanted like a union person or someone who had been at the company longer because you can't compare the regional transportation district in Denver with the transit area authority TCAT in New York because they're different, so I went ahead and went with that, and when I was trying to use that, the lawyers kept saying that's beyond the scope, that's beyond the scope, and I didn't realize as a pro se litigant that I could have, you know, contacted the judge and say, listen, this is part of the scope of the case because of it led up to where I finally decided to apply for the job with ten years under my belt with this company. I was there for the merger in 2006. I was there as one of the original trainers, which I can prove through the witnesses that I wanted to put on the stand, that I was one of the original trainers there that helped train since 2006 until 2013 when the first, when this job was offered, and at that point, I had trained three quarters of the fleet plus two dispatchers, two supervisors, and now two managers because, I'll get to that in just a second, I'm sorry, I'm getting ahead of myself. So I was not even taken into consideration, and they say, well, how could you have known that they weren't going to hire you? It's like because they didn't. I mean, they waited seven months, so after they waited seven months, they decided to push a two-week hiring process, and when I took the deposition and I stated that I was going, that I wanted more time, it wasn't more time for the interview, which was misconstrued as being more time for me personally than everybody else. That was not what happened. Those words were twisted. I wanted more time. I didn't want more time. I wanted a different time space, a different time to where I could have. Did you withdraw your application? Well, what happened was... That's simple. Yes or no, did you withdraw your application? I withdrew my application after trying to find out if I would have a working team on my side because with my experience working as a transit supervisor in Denver, you have to have the support of the team and the people around you to make a positive change because in mass transportation, people can die, and they did, and that's the thing. You have to keep your ear to the ground. You have to be proactive, and you don't wait until something happens before you proceed with it, and that's part of the frustration that I had over this time. Your time has expired. Okay. You've reserved one minute for rebuttal. Let's hear from the Tompkins area, Tompkins County area transportation. Is that the correct? Good morning, Your Honors. May it please the Court. My name is John McCann. I'm appearing on behalf of Defendant Pallese, Tompkins Consolidated Transit. The central and inescapable fact before this Court is that Mr. Gallegos did withdraw his application for promotion to the transit service supervisor position. In light of that, as found by Judge Sharp, Mr. Gallegos cannot establish a primary case of discrimination based on either his age or his national origin. He cannot establish that he completed the application process. He cannot establish that his employer rejected his application. He cannot establish that his application was denied in the circumstances that give rise to an inference of discrimination. Mr. Gallegos' sole and misplaced reliance on his qualifications for the position might have established one element of a primary facial case, but he does not establish the other four elements, and therefore does not carry his burden under very well-established precedent, frankly, throughout the country, including in this Court's decision in Brown v. Coach Storrs, which is the lead case that we cited in our brief, and there is no basis whatsoever on which to overturn the well-reasoned decision of Judge Sharp that Mr. Gallegos simply did not satisfy his burden proof in this case. With that, Your Honor, we respectfully submit that the decision, the order of Judge Sharp should be affirmed, in this case dismissed in its entirety. If you have any questions, I'd be happy to entertain them. Otherwise, I'll devote my time to the Court. Thank you. Thank you, counsel. Mr. Gallegos, you saved one minute for rebuttal. Okay. The circumstances that occurred in my situation there was that currently all of the defendants that are named in here as defendants who are on the hiring team aren't even there anymore. The only people left are the two brothers who actually were promoted to managers, so I can't even, like, try to even be a transit supervisor because I didn't do anything wrong. They did not hire the person that was the most qualified for the position, and then I can prove it. And if you look at the people that got hired, actually two brothers got hired when it was a position for one transit supervisor, one of which had an associate's degree in criminal justice. Where are the criminals? And then the other one did voluntary research in marine biology. I mean, I just cannot believe it. So who waits seven months to hire someone like me? I thought, you know, it was discriminatory because you would think that with my experience and knowing most of the people in the fleet that I would have made the biggest positive impact on this company to move forward. But they keep falling apart. They keep hiring people like this. They keep doing these types of practices. And I am one person that just wanted to put my foot down on it to say that it is illegal. And you can't do that in a private, not-for-profit corporation. Thank you. Thank you both. We'll reserve decision. The next two cases on our calendar are on submission, so I will ask the clerk to adjourn court. Thank you.